876 F.2d 409
 28 Fed. R. Evid. Serv. 530
 John B. LEEFE, Plaintiff-Appellant,
v.
AIR LOGISTICS, INC., et al., Defendants.
McDERMOTT, INC., Defendant-Third Party Plaintiff,
v.
OFFSHORE LOGISTICS, INC., Third-Party Defendant-Appellee.
Charlene C. BLANCHARD, etc., et al., Plaintiff,
v.
AIR LOGISTICS, INC., et al., Defendants.
 No. 88-3047.
 United States Court of Appeals,
Fifth Circuit.
 June 28, 1989.
 
 James L. Donovan, James L. Donovan, Jr., Metairie, La., for John leefe.
 Kenneth H. Laborde, Sharon L. Gross, New Orleans, La., for Offshore Logistics.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, WILLIAMS, and DAVIS, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Plaintiff/appellant Leefe brings this appeal urging that the district court erred in excluding testimony by a medical expert on the grounds that the evidence was cumulative. Leefe also contests the adequacy of the jury's damage award.
 
 
 2
 Leefe was injured in January 1976 when a helicopter rolled over him while he was disembarking. Leefe sustained numerous injuries, including a ruptured bladder, fractures of the ribs, femur and pelvis, and a sacroiliac disruption. Leefe's primary physician was Dr. Warren. On two occasions, Leefe saw Dr. Russo for a second opinion.
 
 
 3
 Leefe brought suit against third-party defendant/appellee Offshore Logistics, Inc. ("Offshore"). Offshore did not contest liability. During the trial, Dr. Warren testified as to Leefe's injuries, medical care and prognosis. Following Dr. Warren's testimony, Leefe sought to elicit testimony from Dr. Russo. Offshore objected to Dr. Russo testifying and after Leefe's attorney informed the district judge of the substance of Dr. Russo's proposed testimony, the judge found that the testimony was inadmissible on the grounds that it would be cumulative. After a trial on the issue of damages, the jury awarded Leefe $15,000 in future lost wages, $40,000 in past mental and physical pain and suffering, and $20,000 in future mental and physical pain and suffering. Dissatisfied with the jury's award and the exclusion of Dr. Russo's testimony, Leefe filed a Motion to Alter or Amend Judgment or, alternatively, a Motion for New Trial. The district court denied Leefe's motions.
 
 
 4
 Exclusion of Dr. Russo's testimony.
 
 
 5
 Leefe urges that the district court erred in holding that Dr. Russo's testimony was cumulative and therefore inadmissible. It is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court. Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir.), cert. denied 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985); Fed.R.Evid. 403. This court can reverse a district court's exclusion of testimony for abuse of discretion only if we find that the ruling was manifestly erroneous. Page v. Barko Hydraulics, 673 F.2d 134, 139 (5th Cir.1982).
 
 
 6
 In determining whether Dr. Russo's testimony would have been cumulative, we compared Leefe's proffer to Dr. Warren's actual testimony. Leefe's counsel informed the court that Dr. Russo would testify that "there [was] going to be an extreme probability ... [that Leefe would develop] arthritis." The attorney also stated that Dr. Russo would "show the degree of disability as to this man because he has rated this man."
 
 
 7
 During trial, Leefe's attorney asked Dr. Warren whether he expected Leefe to suffer from arthritis in the future. Dr. Warren answered that "any time you injure a joint, then statistically you are subject to the possibility of what we call post-traumatic arthritis." Dr. Warren further testified that statistically he expected Leefe to develop arthritis in the future and that "[a]ny time ... [there is] an injury like this, then you would be concerned about the onset of an arthritis that could develop after injury." He also stated that "popping" in Leefe's right sacroiliac joint "made [him] wonder if this [was] not the early onset of some arthritic changes." Although Dr. Warren did not testify as to the exact odds that Leefe would develop arthritis, his testimony did address the likelihood that Leefe would develop arthritis. We, therefore, find that the court did not abuse its discretion in prohibiting Leefe from putting on further evidence concerning the probability that Leefe would develop arthritis.
 
 
 8
 Similarly, we find that Dr. Warren's general testimony concerning Leefe's disability was sufficient to warrant exclusion of Dr. Russo's testimony of Leefe's specific disability rating. Dr. Warren testified that he did not give Leefe a disability rating. He also testified that no one ever asked him for such a rating. When questioned about Leefe's capacity to return to his pre-accident activities, Dr. Warren testified that Leefe was capable of returning to his "full activities;" however, he also stated that it was doubtful that Leefe would ever be able "to pursue a long-term ... manual labor job." Finally, when asked whether Leefe was in the same physical condition and whether he had the same capabilities he had prior to the accident, Dr. Warren answered "no." Although Dr. Warren did not give Leefe a precise disability rating, he testified regarding Leefe's capacity and disability. We find that through Dr. Warren's testimony, Leefe was able to present sufficient evidence of his disability to warrant the court's finding that further testimony as to Leefe's disability would be cumulative.
 
 
 9
 It is difficult for this court to determine the necessity and cumulative effect of testimony by several experts. For this reason, we defer to the district court who is in the best position to make these judgments. We do want to discourage attorneys from parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert. With this caveat, nothing in this opinion should be read to impose a precise limit on the number of experts who can testify in a given area.
 
 
 10
 Damages.
 
 
 11
 Leefe also argues that the jury's award of damages was unsupported by the evidence. In particular, Leefe contests the $15,000 award for future lost wages, the $40,000 award for past mental and physical pain and suffering, and the $20,000 award for future mental and physical pain and suffering.
 
 
 12
 Leefe contests the $15,000 award for future lost wages. Leefe's expert testified that he had lost future wages between $208,719 and $333,716. Offshore's expert estimated lost future wages between $62,106 and $168,000. We recognize that it is unusual for the jury to make an award below the amount approximated by expert witnesses and that we must be particularly careful when reviewing such an award to be sure it is supported by the evidence. However, we must also recognize that a jury's award is more sacred than an expert's testimony. We will not disturb a jury award unless there is "the strongest of showings." Thezan v. Maritime Overseas Corp., 708 F.2d 175, 182 (5th Cir.1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). Although we must give great deference to the jury, the jury need not defer to the experts. We do not require that a jury's award fall within the estimates given by expert testimony. See Haas v. Atlantic Richfield, 799 F.2d 1011, 1017 (5th Cir.1986) (affirming award of $25,000 for past lost wages and $10,000 for future lost wages where expert testified that past lost wages were $61,605 and future lost wages were $422,076); Bartholomew v. CNG Producing Co., 832 F.2d 326, 331 (5th Cir.1987) (holding that damage award of $325,000 was adequate despite testimony that economic loss was between $473,163 and $614,315). The purpose of expert testimony is to guide the jury. Bartholomew, 832 F.2d at 331. In the instant case, the jurors heard testimony that Leefe might be able to return to his prior work. They also learned that he was attending college. From this testimony, the jurors could conclude that Leefe would make more money than he did prior to the accident. We thus find that there is evidence to support the $15,000 award, even though it is at the low end of what we consider to be a reasonable award.
 
 
 13
 After a thorough review of the award for past and future mental and physical pain and suffering, we find that the award, although low, is adequate.
 
 
 14
 For the above reasons, we AFFIRM.